**COVE TANKERS CORP.,**
**Plaintiff-Appellant,**

v.

**UNITED SHIP REPAIR, INC.,**
**Defendant-Appellee.**

**No. 839, Docket No. 81–7825.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1982.
Decided June 15, 1982.

William M. Kimball, New York City, for plaintiff-appellant.

William J. Burke, New York City (Poles, Tublin, Patestides & Stratakis, Thomas J. Stadnik, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and MISHLER,* District Judge.

FEINBERG, Chief Judge:

This appeal raises the issue whether on the facts before us the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (Act), applies beyond the territorial waters of the United States to cover ship repairmen injured or killed while working on a ship on the high seas. Judge Leonard B. Sand of the United States District Court for the Southern District of New York, in an opinion reported at 528 F.Supp. 101, concluded that the Act covers these employees. We affirm the judgment, but on narrower grounds than those relied on by the district court.

## I. *Facts and Arguments*

Two employees of defendant United Ship Repair, Inc. (employer) were repairing the boilers of a ship owned by plaintiff Cove Tankers Corp. (shipowner) while the vessel was underway on a voyage from Philadelphia to New York. During the voyage, the vessel deviated from its scheduled course onto the high seas 135 miles offshore. There, we are told, a boiler exploded and one ship repairman was killed and another injured. The injured employee and the next of kin of the deceased employee brought damage claims against the shipowner, which settled the claims for almost $300,000. Thereafter, the shipowner sought indemnification for that amount and for legal fees and expenses from the employer, which had compensated the claimants under the Act. The district court granted judgment on the pleadings, finding that the phrase "injury occurring upon the navigable waters of the United States," 33 U.S.C. § 903(a), covered employees repairing ships

on the high seas, and that therefore the shipowner's right of indemnification was barred by the Act, 33 U.S.C. § 905(b).

On appeal, the shipowner renews the argument it made in the district court, that the high seas are not "navigable waters of the United States." Not surprisingly, the employer argues that the contrary view of the district court is correct. The employer also presses two arguments that the district court did not address: First, in defining employer, 33 U.S.C. § 902(4), the Act includes maritime workers employed "in whole or *in part,* upon the navigable waters of the United States" (emphasis supplied); therefore, repairman on a voyage occurring in part on territorial waters are covered for the whole voyage. Second, the situs requirement of the Act has been replaced by a "functional" test and "any harborworker including a ship repairman," 33 U.S.C. § 902(3), is covered without regard to the place where the injury occurred. *Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs,* 540 F.2d 629, 636 (3d Cir. 1976). The parties agree that the only issue is whether on these facts the Act applies. If it does, the shipowner concedes that the Act bars it from obtaining indemnification from the employer.

## II. *Discussion*

Because we choose a narrower path to reach the same result, we discuss only briefly the reasoning and conclusions expressed by the district court in its careful opinion. The district court's analysis of the Act began with the section entitled Coverage, 33 U.S.C. § 903(a), which states in pertinent part:

> Compensation shall be payable . . . but only if the disability or death results from an injury occurring upon the navigable waters of the United States . . . .

At first reading, it is tempting to equate the phrase "navigable waters of the United States" with coastal or territorial waters, a reading reinforced by the Act's definition of United States found at 33 U.S.C. § 902(9).

---

* Honorable Jacob Mishler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

The term "United States" when used in a geographical sense means the several States and Territories and the District of Columbia, including the territorial waters thereof.

This intuitive reaction is strengthened by the Supreme Court's definition of high seas as those outside the territorial sea. *Louisiana Boundary Case*, 394 U.S. 11, 22–23, 89 S.Ct. 773, 780–781, 22 L.Ed.2d 44 (1969).[1] However, the district court's deeper analysis disclosed an unexpected difference of opinion expressed in treatises; the district court concluded that the authorities analyzed pointed to the conclusion that the high seas are included in "navigable waters of the United States." The district court noted that the classic definition of that term is found in *The Daniel Ball*, 77 U.S. 557, 563, 19 L.Ed. 999 (1871): "[Waters] constitute navigable waters of the United States within the meaning of the Acts of Congress . . . when they form . . . a continued highway over which commerce is or may be carried on with other States or foreign countries. . . ." 528 F.Supp. at 106–07 & nn.8 & 9. Proceeding thereafter to the Administration section of the Act, 33 U.S.C. § 939, the district court found the high seas mentioned for the first and only time as follows:

(b) The Secretary shall establish compensation districts, to include the high seas and the areas within the United States. . . . Judicial proceedings . . . in respect of any injury or death occurring on the high seas shall be instituted in the district court within whose territorial jurisdiction is located the office of the deputy commissioner having jurisdiction in respect of such injury or death. . . .

Following further consideration of the Act's legislative history, treatises and case law, the district court concluded that when Congress drafted the Act in 1927, it intended to cover longshoremen injured on the high seas.

Before considering the merits of the issue before us, we note the following in passing. Congress in 1927 passed the Act in response to problems facing the courts after the Supreme Court in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), decided that state compensation systems could not extend seaward of the water's edge, the so-called *Jensen* line. 68 Cong.Rec. 5412–3 (1927). Congressional commentary before the bill was passed reflects a focus on land-based workers engaged in maritime activities at the water's edge who were therefore not covered by any compensation scheme: "In this legislation we are appealing for justice to 300,000 men, 100,000 of whom are employed at the port of New York and along the Great Lakes." Id. Following 1927, for over 40 years, courts have continually faced the problem under the Act of drawing lines at the water's edge and apparently, as the district court noted, "no federal court [has] analyzed the question of [the Act's] coverage of the high seas." 528 F.Supp. at 104 (footnote omitted). But, as the district court stated, "[i]t is the recently expanded practice of sending repairmen to sea with a vessel in order for the ship to avoid costly time laid up in port which brings this question before us." Id. at 104. The problem now before us could hardly have occurred to a Congress in 1927 that had only five years earlier commented that "longshoremen are

1. The Supreme Court has defined territorial and high seas as follows:

Under generally accepted principles of international law, the navigable sea is divided into three zones, distinguished by the nature of the control which the contiguous nation can exercise over them. Nearest to the nation's shores are its inland, or internal waters. These are subject to the complete sovereignty of the nation, as much as if they were a part of its land territory, and the coastal nation has the privilege even to exclude foreign vessels altogether. Beyond the inland waters, and measured from their seaward edge, is a belt known as the marginal, or territorial, sea. Within it the coastal nation may exercise extensive control but cannot deny the right of innocent passage to foreign nations. Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation.

(Footnotes omitted.) *Louisiana Boundary Case*, 394 U.S. 11, 22 23, 89 S.Ct. 773, 780 781, 22 L.Ed.2d 44 (1969).

no more peripatetic workmen than are the repair men. They do not leave the port in which they work." *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 257 n.12, 97 S.Ct. 2348, 2353 n.12, 53 L.Ed.2d 320 (1977), quoting from a House Report considering a 1922 bill that would have authorized the states to apply their own compensation statutes to longshoremen injured seaward of the *Jensen* line.

In any event, we do not believe it necessary to engage, as the district court did, in the difficult analysis of whether the phrase "navigable waters of the United States" always, or even usually, includes the high seas within the meaning of the Act.[2] We see the issue before us as a much more limited one: Can the Act *ever* be applied when an injury occurs on the high seas? We answer that question in the affirmative, and we rest our analysis on the special facts of this case, and a reading of the Act consistent with recent Supreme Court opinions and with the intent of the Congress that most recently amended the Act in 1972. The parties concede that the employees were performing traditional ship repair functions of the sort covered by the Act.[3] They were injured on board a United States flag vessel moving from one United States port (Philadelphia) to another (New York) with no deviation, scheduled or otherwise, into the territorial waters of any foreign nation.

Keeping in mind the facts of this case, we note first that the action in the district court was brought by the shipowner for indemnification, not by the injured employees. The shipowner is attempting to shift its loss onto the employer, although Congressional intent to prohibit such indemnification generally is quite clear from the Act. The Act expressly bars such recovery, 33 U.S.C. § 905(b), and the legislative history

reflects a definite focus on the problem: "Under the proposed amendments the vessel may not by contractual agreement or otherwise require the employer to indemnify it, in whole or in part, for such damages." H.R.Rep.No.92–1441, 92nd Cong., 2nd Sess. (1972), reprinted in 1972 U.S.Code Cong. & Ad.News 4698, 4705. Next, we note that the parties do not dispute on appeal the district court's conclusion that the injuries in this case, occurring "135 miles offshore, and therefore well beyond state waters, must be beyond the outer limit of state coverage." 528 F.Supp. at 113. If so, the question is not whether a federal, as opposed to a state, compensation scheme applies; rather the question is whether the federal, or no, scheme of compensation applies. If injured employees on these facts do not have the benefits of the Act, they face delay and uncertainty in recovering damages for their injuries.

The case before us presents the reverse of the traditional situation that had troubled the courts and Congress for so many years, since the employees here were injured far seaward of any previously drawn *Jensen* line. Congress in 1972 extended the Act's coverage to the ship repairman who may walk back and forth from pier to ship to perform his duties. As the Supreme Court noted in *Pfeiffer v. Ford*, 444 U.S. 69, 73, 100 S.Ct. 328, 332, 62 L.Ed.2d 225 (1979):

> The Act now extends coverage to more workers by replacing the single-situs requirement with a two-part situs and status standard. The newly broadened situs test provides compensation for an "employee" whose disability or death "results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway,

---

**2.** We place to rest any speculation that the place of injury in *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 169 n.3 (2d Cir. 1973), cited by both parties, occurred on the high seas. We have reviewed the appendix in that case filed with this court. Testimony by the claimant's employer shows that on March 11, the day of the injury, the ship was in a foreign port.

**3.** 33 U.S.C. § 902 provides in pertinent part:

    (3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman. . . .

or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." § 3(a), U.S.C. § 903(a).

However, Congress did not consider that this same employee might by chance repair a ship while it moves in and out of territorial waters without entering the waters of any foreign nation. We believe that failure to apply the Act on the facts before us would be inconsistent with congressional intent to reduce the importance of situs as applied to employees who might otherwise be covered for only a part of their work.

Although the situs requirement of the Act was not at issue in *Pfeiffer*, id. at 77 n.6, 100 S.Ct. at 334 n.6, the Court's analysis of congressional intent is relevant here. The Court noted that "Congress was especially concerned that some workers might walk in and walk out of coverage." Id. at 83 n.18, 100 S.Ct. at 337 n.18. Were we to follow the reasoning urged upon us by the shipowner, that the Act can never apply to waters farther than three miles offshore, the voyage in this case would have moved the employees in and out of coverage. Indeed, under that reasoning, shipowners could by mere course deviation into waters beyond that limit, prevent employees, should they be injured, from receiving the Act's benefits and avoid the Act's prohibition against indemnification. It is true that congressional focus in 1972 was landward, not seaward. But, paraphrasing the Supreme Court, we do not think that Congress intended the Act's coverage to shift with the shipowner's whim. Id. at 83, 100 S.Ct. at 337.

Like the Court in *Pfeiffer*, we believe that our decision in this case serves congressional intent not to allow a mere factual eccentricity to frustrate the uniform standard of coverage. Id. But our holding is a narrow one. Coverage of the Act in this case was questioned only because the vessel, scheduled for a voyage between two United States ports, went on the high seas for a

portion thereof.[4] Such a circumstance should not place a covered employee or his dependents in jeopardy of losing immediate statutory compensation under the Act. Any other result in this case would "revitalize the shifting and fortuitous coverage that Congress intended to eliminate." *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. at 274, 97 S.Ct. at 2362.

Deciding the case on the limited ground discussed here, we do not reach the other points raised by the parties, and we express no opinion on them. The judgment of the district court is affirmed.

---

4. Thus, we are not faced with some of the more exotic circumstances posed by the shipowner at oral argument, such as an action brought in a federal district court to recover for injuries to a foreign longshoreman on board a foreign ship on the high seas between foreign ports.