Edmundo S. MARROQUIN, Plaintiff,

v.

AMERICAN TRADING TRANSPORTA-
TION COMPANY, INC., Defendant.

AMERICAN TRADING TRANSPORTA-
TION COMPANY, INC.,
Third–Party Plaintiff,

v.

STEVENS TECHNICAL SERVICES,
INC., Third–Party Defendant.

No. 86 CV 4296(ERK).

United States District Court,
E.D. New York.

Dec. 30, 1988.

Charles Berkman, Brooklyn, N.Y., for plaintiff.

Haight Gardner, Poor & Havens, New York City by Stephen K. Carr, Lester Schwab Katz & Dwyer, New York City by Richard Granofsky, for defendant.

## CORRECTED MEMORANDUM AND ORDER

KORMAN, District Judge.

Plaintiff, Edmundo S. Marroquin, was injured on November 8, 1985 while cleaning a cargo tank aboard the S.S. Washington Trader. At the time, the vessel was sailing on the high seas on a voyage that would take it from New Jersey, through the Panama Canal, to Oregon. Marroquin was employed by third-party defendant, Stevens Technical Services ('Stevens'), and was injured aboard a vessel owned by defendant and third-party plaintiff, American Trading Transportation Company ('American Trading'). Marroquin originally alleged a cause of action for negligence against American Trading. On June 12, 1987, an order was issued granting Marroquin leave to file an amended complaint asserting an additional cause of action against American Trading for unseaworthiness. American Trading then instituted a third-party action for contribution and indemnification against Stevens on October 21, 1987.[1]

1. When Stevens neglected to answer the third-party complaint, a default judgment was entered on February 29, 1988. Stevens moves to vacate that default judgment along with its motion for summary judgment. Because all parties consent, the motion by Stevens is granted and the default judgment is vacated.

Stevens now moves for summary judgment dismissing the third-party complaint. Stevens argues that Marroquin fails to state a cause of action for unseaworthiness against American Trading and that, as a consequence, American Trading's third-party action against Stevens must be dismissed. American Trading seeks dismissal of the cause of action for unseaworthiness and does not oppose dismissal of the third-party action should the cause of action for unseaworthiness be dismissed.

Both Stevens and American Trading contend that Marroquin is barred from proceeding against American Trading for unseaworthiness because he is covered by the Longshore and Harbor Workers' Compensation Act (hereinafter 'LHWCA'). 33 U.S.C. §§ 901–950 (1986 & Supp.1988). If an employee is covered by the LHWCA, his exclusive legal remedy, other than workers' compensation benefits received from his employer, is an action in negligence against the owner of the ship on which he was injured. Section 905(b) of the Act explicitly prohibits claims against the vessel for unseaworthiness. Moreover, it provides that if a covered worker succeeds in holding a shipowner liable in negligence, the shipowner may not, through legal action or by contract, shift its liability to the worker's employer. *See* H.R.Rep. No. 1441, 92d Cong., 2d Sess. 7, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4704.[2]

While the defendants argue that the LHWCA bars Marroquin's cause of action for unseaworthiness against American Trading, it seems reasonably clear that since Marroquin is not a covered worker under the Act he is not deprived of this traditional maritime remedy.

### Discussion

Unseaworthiness is a species of liability without fault. *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85, 94, 66 S.Ct. 872, 877,

90 L.Ed. 1099 (1946). *See also Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 164, 101 S.Ct. 1614, 1620, 68 L.Ed.2d 1 (1981). A cause of action based on such liability extends to all members of a crew who are "doing a seaman's work and incurring a seaman's hazards." *Sieracki*, 328 U.S. at 99, 66 S.Ct. at 880. Indeed, one need not be a traditional "seaman" to invoke this remedy. In *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165 (2d Cir.1973), for example, the Court of Appeals held that a hairdresser employed by an independent contractor in the ship's beauty salon during a Mediterranean cruise could bring a cause of action for unseaworthiness against the shipowner. "The duty to provide a seaworthy ship," was held to apply "not only to the owner's employees but to all 'who perform the ship's service ... with his consent or by his arrangement.' " *Id.* at 169 (quoting *Sieracki*, 328 U.S. at 95, 66 S.Ct. at 877).

There is no basis for distinguishing the present case from *Mahramas*. Marroquin was part of a "riding crew" provided by Stevens at the shipowner's behest and had a permanent connection with the vessel for the duration of the voyage between the east and west coasts of the United States. The "riding crew," just as the ship's own crew, slept aboard the ship, took their meals aboard and were generally exposed to all the risks inherent in an ocean trip around the North American continent. Indeed, it is undisputed that members of the ship's crew sometimes did work identical to that performed by Marroquin and other members of the riding crew. Gallo deposition, at 9. Under these circumstances, Marroquin's complaint properly states a claim against American Trading for unseaworthiness. *See Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir.1984) (offshore oil field diver working aboard drilling ves-

---

**2.** Title 33 U.S.C. § 905(b) provides:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel ... and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

sel who was continually exposed to maritime perils and ate and slept aboard with crew members is a seaman) *and Clark v. Solomon Navigation, Ltd.*, 631 F.Supp. 1275 (S.D.N.Y.1986) (river pilot temporarily employed with vessel and exposed to seaman's hazards entitled to warranty of seaworthiness).

This conclusion is not undermined by the provisions of the LHWCA, 33 U.S.C. §§ 901–950, upon which the defendants rely. The legislative history of the LHWCA, which has been exhaustively discussed in other cases,[3] shows that Congress amended the LHWCA in 1972 for the purpose of eliminating claims for unseaworthiness by "longshoremen and other non-seamen working on board a vessel *while it is in port."* See H.R.Rep. No. 1441, 92d Cong., 2d Sess. 6, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4703 (emphasis supplied). The exclusion of this particular class of workers reflected the view of Congress that "the seaworthiness concept" evolved "to protect seamen from the extreme hazards incident to their employment which frequently requires long sea voyages and duties of obedience to orders not generally required of other workers." *Id.* This concern, however, did not apply "with equal force" to land-based workers who performed work on board the vessel while it was in port. *Id.*

The amendments effectuating this and other changes were intended to eliminate unseaworthiness claims for workers covered by the Act in exchange for an increase in compensation benefits payable and for the more limited right to recover from the vessel owner for negligence. *Aparicio v. Swan Lake*, 643 F.2d 1109, 1117 (5th Cir. 1981). At the same time, coverage was expanded to provide uniform workers' compensation for land-based workers whose

benefits previously varied depending on whether they were on the vessel or dockside at the time they were injured. *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 263, 273, 97 S.Ct. 2348, 2357, 2362, 53 L.Ed.2d 320 (1977).

Whether Marroquin would be covered by the Act if he had been injured while engaged in cleaning the vessel's tanks when it was at dock-side, *see Hite v. Maritime Overseas Corp.*, 375 F.Supp. 233 (E.D.Tx. 1974) (dockside worker cleaning cargo tanks was held to be covered since work is in the nature of ship repairing); *Perez v. Marine Transport Lines*, 160 F.Supp. 853 (E.D.La.1958) (tank cleaner working aboard the vessel in preparation for its removal from navigation was not doing work ordinarily performed by a "member of a crew"),[4] it seems plain that, in the context of the present case, Marroquin does not come within the category of workers to which Congress intended to deny the benefit of unseaworthiness claims, i.e., "longshoremen and other non-seamen working on board a vessel while it is in port."

■ Moreover, even if Marroquin's employment was otherwise deemed to come within the coverage of the LHWCA, recovery for unseaworthiness would not be precluded here because the LHWCA is applicable only if a worker is injured "upon the navigable waters of the United States (including any ... adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). Marroquin was injured on the high seas, in international waters, rather than on a vessel sailing "the navigable waters of the United States." The LHWCA would, therefore, appear to be inapplicable. *See Mahramas*, 475 F.2d at 169 n. 3.

---

3. *See, e.g., Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1113–18 (5th Cir.1981); *Klarman v. Santini*, 503 F.2d 29, 35–36 (2d Cir.1974), *cert. denied*, 419 U.S. 1110, 95 S.Ct. 785, 42 L.Ed.2d 807 (1975).

4. An "employee" covered by the Act is defined as "any person engaged in maritime employ-

ment, including any longshoreman ... and any harbor-worker including a ship repairman." 33 U.S.C. § 902(3). Excluded from coverage are "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). A "member of a crew" is equivalent to a "seaman" under maritime law. *McDermott, Inc. v. Boudreaux*, 679 F.2d 452, 457 (5th Cir.1982); *Travelers Ins. Co. v. Belair*, 412 F.2d 297, 302 (1st Cir.1969).

*Cove Tankers Corp. v. United Ship Repair, Inc.,* 683 F.2d 38 (2d Cir.1982), does not require a contrary result. There, a ship repairman was injured on the high seas when the vessel deviated from its scheduled course between Philadelphia and New York. Judge Sand, who wrote the opinion in the district court, had concluded that the words "navigable waters of the United States" included the high seas. *Cove Tankers Corp. v. United Ship Repair, Inc.,* 528 F.Supp. 101, 112 (S.D.N.Y. 1981).[5] The Court of Appeals, however, preferred to address the "limited" question: "Can the Act *ever* be applied when an injury occurs on the high seas?" *Cove Tankers,* 683 F.2d at 41 (emphasis in original). Stressing that its "holding is a narrow one,"[6] the Court of Appeals held that, on the facts before it, a minor deviation onto the high seas should not create gaps in the Act's coverage. *Id.* at 42.

The Court of Appeals for the Fifth Circuit considered a similar fact situation. A shipfitter, ordinarily a shoreside worker, participated in sea trials on a vessel which had just been completed for the United States Navy. He was injured outside the three-mile territorial limit. *Reynolds v. Ingalls Shipbuilding Div., Litton Sys., Inc.,* 788 F.2d 264 (5th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 253 (1986). Concerned that the three-mile line would become "the on-off switch for the LHWCA," *id.* at 271, the Court of Appeals held that the shipfitter who "happen[ed] to have been several nautical miles out to sea" retained his coverage during the sea trial. *Id.* at 269.

Marroquin's presence on the high seas, however, was not a deviation or fortuitous occurrence. The voyage was not a shuttle between two adjacent ports nor was it a venture out to ocean and back. The S.S. Washington Trader was on a two week voyage that would take it through the Panama Canal and past several nations in Central America. Marroquin was hired for the duration of the voyage. Under these circumstances, "[b]ecause the injury in this case did not arise upon the navigable waters *of the United States,* the [Longshore and Harborworkers' Compensation] Act clearly does not apply." *See Mahramas,* 475 F.2d at 169 n. 3 (emphasis in original).

*Conclusion*

The LHWCA targets shoreside and amphibious workers and excludes "members of a crew." On this voyage, Marroquin performed his duties entirely on the ocean, was the equivalent of a member of the crew and is protected by the warranty of seaworthiness. Marroquin, therefore, does not come within the category of workers that Congress intended to preclude from maintaining a cause of action for unseaworthiness. Moreover, even if his employment fell within that category, the location of the vessel at the time of the accident would preclude the application of the LHWCA and its attendant benefits.[7] Under these circumstances, he may maintain a cause of action for unseaworthiness against American Trading. The latter, in turn, is not precluded from seeking contribution or indemnification from Stevens.

---

**5.** Judge Sand observed that the issue of the application of the LHWCA to workers injured on the high seas was arising with greater frequency because of the "recently expanded practice of sending repairmen to sea with a vessel in order for the ship to avoid costly time laid up in port." *Cove Tankers,* 528 F.Supp. at 104. *See e.g. Everett v. Cove Shipping, Inc.,* 685 F.Supp. 831 (S.D.Ala.1987) and *Hodges v. Keystone Shipping Co.,* 578 F.Supp. 620 (S.D.Tex.1983) which reach apparently conflicting results without discussing the issue.

**6.** Language limiting the holding in *Cove Tankers,* such as "narrow", "limited" and "special facts of this case", was used nine times in the opinion of the Court of Appeals. This caution

apparently reflected the concern of the Court of Appeals with a result that departed from the language of the LHWCA and its prior holding in *Mahramas,* 475 F.2d at 169 n. 3. Because the injury in *Mahramas* took place while the vessel was in a foreign port rather than on the high seas, the issue of the applicability of the LHWCA to injuries suffered on the high seas was not deemed to be entirely foreclosed. *Cove Tankers,* 683 F.2d at 41 n. 2.

**7.** The fact that such benefits would not be available because of the situs of the vessel when the injury occurred provides another reason to permit the unseaworthiness claim. *Cf. Aparicio v. Swan Lake,* 643 F.2d at 1118 n. 17.

Accordingly, the motion seeking to dismiss the unseaworthiness cause of action and the third-party claim is denied.

SO ORDERED.