Melvin A. THOMPSON

v.

CARGILL, INC., et al.

Civ. A. No. 82–0045.

United States District Court,
E.D. Louisiana.

May 21, 1984.

Charles B. Colvin, New Orleans, La., for plaintiff.

Robert H. Murphy, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant Clan Line Steamers, Ltd.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on the motion of defendant, Clan Line Steamers, Ltd., for summary judgment. Following oral argument, the Court continued the matter and ordered plaintiff to submit within a specified time period countervailing evidence, if any, to further oppose defendant's motion. Plaintiff submitted no further evidence prior to the new date of the hearing on the motion. Having considered the memoranda, the record and the law applicable to this motion, the Court grants the motion of defendant for summary judgment for the following reasons.

The plaintiff, Melvin Thompson, was employed as a stevedore by Rogers Terminal and Shipping Corporation (Rogers). Rogers was engaged to load a cargo of corn aboard M/V KING ALFRED at Cargill Grain Elevator. In order to reduce grain dust in the atmosphere during the loading operation, canvas dust covers were attached to Cargill's loading spouts and secured to the vessel's hatch coamings. Grommets ("eyes" or "rings") were located along the edges of the dust covers (which were manufactured, owned and positioned by entities other than the movant), and ropes were threaded through the grommets.

The plaintiff and fellow stevedores relieved another Rogers crew approximately seven hours after the loading had commenced. In the course of the loading operation, plaintiff and a fellow worker were pulling on a rope attached to a grommet when the grommet tore out of the dust cover, causing plaintiff to fall and/or slip backward. The plaintiff instituted the present litigation against Clan Line Steamers, Ltd., among others, as owner of M/V KING ALFRED, in an action under § 5(b) of the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), alleging that the defendant was negligent in causing injuries sustained as the result of the incident described above.

The movant asserts that it is entitled to summary judgment on two grounds, namely, (1) lack of negligence on the part of the vessel owner, under the standard for shipowner liability, and (2) lack of causation between the circumstances which plaintiff claims constituted negligence on the part of the vessel owner and the incident in suit.

The plaintiff apparently does not contest the material facts contained in the defendant's statement (see Appendix). However, plaintiff contends that the following facts are still at issue: (1) whether plaintiff slipped, as well as fell, causing his injury, (2) whether the presence of grain and dew on the deck of the vessel was known to the vessel owner, as well as the stevedoring company, (3) whether the vessel owner also knew that the grain and dew made the deck slippery, and (4) whether there should have been a non-skid surface on the deck of the vessel.

■ The Court finds that the circumstances which plaintiff claims gave rise to his accident and injury do not constitute negligence on the part of the vessel owner. Thus, we do not reach the causation issue raised by the defendant.

The standard of care owed by the defendant vessel owner is governed by the Supreme Court's decision in *Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed. 1 (1981). Before stevedoring operations begin, the vessel owner must exercise ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property. The vessel owner must warn the stevedore of hidden unsafe conditions on the vessel of which it is or should be aware. Id. at 166–167.

■ Once the stevedore begins operations, the vessel owner has no duty to supervise the work or inspect the area assigned to the stevedore, and the vessel owner is entitled to rely on the expertise and reasonableness of the stevedore. Id. at 168–172, 101 S.Ct. at 1621–1624.

■ A duty will arise to protect the employees of a stevedore during operations when two conditions are fulfilled. If the vessel owner acquires actual knowledge during stevedoring operations that the vessel or its gear pose an unreasonable risk of harm to the longshoremen and if the vessel owner also learns that the stevedore is acting unreasonably in failing to protect the employees against the danger, then the vessel owner acquires a duty to intervene and protect the longshoremen. Id. at 175–176, 101 S.Ct. at 1626.

■ It is clear that the primary responsibility for the safety of the longshoremen rests upon the stevedore. *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983).

Plaintiff asserts two bases upon which defendant may be liable for negligence of the vessel, namely, (1) the lack of a non-skid surface on the deck of the vessel, and (2) the presence of grain dust and dew, causing the slipperiness of the deck of the vessel at the time of plaintiff's accident. Applying the principles set forth above, it is clear that the defendant vessel owner is not liable under either of these theories of negligence.

■ The lack of a non-skid surface on the deck of the vessel is a condition which existed prior to the commencement of the stevedoring operations. As such, the vessel owner's only duty of care towards the stevedore was to exercise ordinary care in making the area safe for the expert and experienced stevedore, and to warn the stevedore of any hidden unsafe condition. The lack of a non-skid surface was not a hidden condition which would give rise to the vessel owner's duty to warn. Furthermore, it would be ludicrous to suggest that the vessel owner had a duty to resurface the portions of the vessel which it turned over to the stevedore. The Court takes judicial notice of the fact that experienced and expert stevedores have frequent occasion to perform their work on the decks of vessels which may not have non-skid surfaces.[1]

■ With regard to plaintiff's second theory of recovery, it is uncontested that the grain and dew on the deck of the vessel was a condition which arose after the stevedoring operation had commenced. The vessel owner "is not held to a duty to discover the condition [arising during the operations] or to anticipate its danger." *Helaire v. Mobil Oil Co.,* supra. at 1039. Rather, defendant only had a duty to protect plaintiff from this condition if it acquired actual knowledge during the stevedoring operation that the condition posed an unreasonable risk of harm and that the stevedore was acting unreasonably in failing to protect the longshoreman. Plaintiff asserts that the actual knowledge require-

---

1. To hold otherwise would, in effect, allow the longshoreman to proceed on a theory of unseaworthiness, a right which was abrogated by the 1972 amendments to the LHWCA.

ment is still at issue. However, plaintiff's deposition testimony indicates that there were no members of the vessel's crew in the area where he was working at the time of the accident.[2] Furthermore, plaintiff has produced no evidence of record that the vessel owner acquired actual knowledge of the condition. In addition, it is uncontested that grain dust settling on the deck of a vessel is a natural, normal occurrence during grain loading operations. Thus, as in the case of *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 884 (5th Cir.1983), the vessel owner "could rely on [the stevedore] to perform its ... job properly," including the cleaning of the deck as part of the job, and "the slippery footing ... 'posed only a limited and accepted hazard.' "

Accordingly, and for the foregoing reasons, the motion of defendant Clan Line Steamers, Ltd. for summary judgment is granted.

## APPENDIX

### STATEMENT OF UNCONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel, comes Clan Line Steamers, Ltd., to set forth the following statement of undisputed material facts. These material facts are admitted solely for the purpose of this Motion for Summary Judgment.

1.

Clan Line Steamers, Ltd. was the owner of the M/V KING ALFRED in February, 1981.

2.

The M/V KING ALFRED arrived at the Cargill Grain Elevator in Reserve, Louisiana on 18 February 1981 at 2315 hours. (Exhibit A).

3.

The M/V KING ALFRED started loading a cargo of corn on 19 February 1981 at approximately 0100 hours. (Exhibit A).

4.

Cargill Grain Elevator owned and supplied dust covers which were attached to Cargill's loading spouts and secured to vessel's hatch coamings to reduce the amount of grain escaping into the atmosphere during loading operations. (Dew Deposition p. 10, Douglas Deposition pp. 45–46).

5.

The dust covers were attached to the loading spouts by longshoremen and secured to a vessel's hatch coaming by longshoremen (Plaintiff's Deposition pp. 34–39, Dew Deposition p. 12, Douglas Deposition p. 38, Boudoin Deposition pp. 12–14).

6.

Rogers Terminal and Shipping Corporation, an independent master stevedoring company, provided stevedoring services to load a cargo of corn aboard the M/V KING ALFRED on 19 and 20 February 1981. (Douglas Deposition pp. 16, 38, Exhibit A, Plaintiff's Deposition p. 39).

7.

Melvin Thompson worked as a longshoreman since 1969 and was employed as a longshoreman by Rogers Terminal on 19 February 1981 to work aboard the M/V KING ALFRED. (Plaintiff's Deposition p. 20).

8.

Thompson and his fellow longshoremen in the day gang started working aboard the M/V KING ALFRED around 0700 on 19 February 1981 relieving the Rogers Terminal night longshoreman gang and worked in the same area aboard the vessel loading grain (Plaintiff's Deposition pp. 52, 30–31).

9.

At approximately 0830 hours one Cargill loading spout was moved from the vessel's number four hatch to the number three hatch (Plaintiff's Deposition pp. 30–33, Exhibit B).

10.

Melvin Thompson and his fellow longshoremen attempted to secure the dust cover to the vessel's number three hatch at

**2.** Plaintiff's deposition, pp. 38–39.

approximately 0830 hours on 19 February 1981. (Exhibit B).

11.

Thompson had been pulling on the rope attached to the dust cover for over a minute when the dust cover tore causing Thompson to fall backwards, strike his rib cage and injure himself. (Plaintiff's Deposition pp. 47, 34, 46, Boudoin Deposition pp. 15–21).

12.

Grain dust had accumulated on the deck of the M/V KING ALFRED during loading operations between 0100 and 0830 hours on 19 February 1981. (Dew Deposition p. 45).

13.

There was dew on the M/V KING ALFRED's deck at 0830 hours on 19 February 1981. (Plaintiff's Deposition p. 75, Dew Deposition p. 45).

14.

Grain dust landing on a vessel's deck is a natural, normal occurrence during grain loading operations. (Douglas Deposition pp. 39–30, Dew Deposition pp. 52–53, Boudoin Deposition pp. 29–30, Treadaway Deposition pp. 13–14).

15.

Dew on a vessel's deck during humid or foggy weather is a normal, natural occurrence. (Douglas Deposition p. 30, Dew Deposition pp. 53–54).

16.

Grain dust and dew can result in a slippery condition on a vessel's deck. (Douglas Deposition p. 30, Dew Deposition pp. 44–45, Johnson Deposition pp. 48–50).

17.

Experienced longshoremen know that grain dust and/or dew can result in a slippery condition on a vessel's deck. (Douglas Deposition p. 30, Dew Deposition p. 44–45, Johnson Deposition pp. 48–50).

18.

Grain dust and dew on a vessel's deck during grain loading operations is a normal, accepted condition. (Douglas Deposition p. 30, Dew Deposition pp. 44–45, Johnson Deposition pp. 48–50).

19.

The M/V KING ALFRED neither owned nor supplied the dust cover which Thompson was working with at the time of this accident. (Douglas Deposition pp. 45–46, Dew Deposition p. 10).

20.

Rogers Terminal was the party responsible for performing loading operations aboard the M/V KING ALFRED on 19 and 20 February 1981, including the placement of dust covers over the vessel's hatches. (Plaintiff's Deposition p. 39).

21.

No vessel personnel were involved in placement of Cargill dust covers on the vessel's hatches. (Plaintiff's Deposition p. 34, Douglas Deposition p. 38, Johnson Deposition pp. 53–54, Boudoin Deposition p. 3, Richardson Deposition p. 19, David Deposition p. 21).

22.

None of the vessel's crew was in the area where Thompson was working at the time of the accident. (Plaintiff's Deposition pp. 38–39).

23.

Thompson was in a gang of eight longshoremen who were under the instruction, supervision and control of Rogers Terminal Foreman James Douglas (Plaintiff's Deposition pp. 29–30, 32, Douglas Deposition p. 16, Boudoin Deposition pp. 8, 14).

24.

The longshoremen, Plaintiff and the other Rogers Terminal longshoremen received all instructions concerning work aboard the M/V KING ALFRED, including securing of the dust cover to the vessel's number three hatch from Foreman James Douglas or other Rogers Terminal personnel (Plaintiff's Deposition p. 30, Johnson Deposition pp. 53–54, Douglas Deposition p. 16, Dew Deposition p. 37, Boudoin Deposition p. 14, Richardson Deposition p. 19).

CHAFFE, McCALL, PHILLIPS,
TOLER & SARPY

/s/ Robert H. Murphy

ROBERT H. MURPHY

1500 First N.B.C. Building

New Orleans, LA 70112–1790

Telephone (504) 568–1320

Attorneys for Clan Line
  Steamers, Ltd.