**Eugene BILDERBECK, Plaintiff-Appellant,**

v.

**WORLD WIDE SHIPPING AGENCY, a corporation, Frankolyn Shipping, Ltd; Star Shipping A/S, Defendants-Appellees.**

**No. 84–2580.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1985.

Decided Nov. 13, 1985.

Philip R. Weltin, Weltin & Van Dam, San Francisco, Cal., for plaintiff-appellant.

Wayne F. Emard, Acret & Perrochet, San Francisco, Cal., for defendants-appellees.

Before MERRILL and GOODWIN, Circuit Judges, and WILLIAMS,* District Judge.

GOODWIN, Circuit Judge.

Eugene Bilderbeck, an injured longshoreman, appeals from a summary judgment in favor of defendant shipowners. The district court granted summary judgment after striking from Bilderbeck's pleading his allegations of liability based on a theory that the shipowner had placed on the market or in the workplace a dangerously defective product (ship). We affirm.

In 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.,* to foreclose a shipowner's previous "no fault" liability based on a theory of unseaworthiness or nondelegable duty. *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 165, 101 S.Ct. 1614, 1621, 68 L.Ed.2d 1 (1981); *see* 33 U.S.C. § 905. In return for a longshoreman's loss of the right to collect compensation from the stevedore and then sue the ship for unseaworthiness, his

---

* The Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

compensation payments from the stevedore for injuries incurred in the course of employment were substantially increased. *Scindia,* 451 U.S. at 165, 101 S.Ct. 1621. The longshoreman still has a right to seek "third party" recovery from the shipowner for its negligence, but the stevedore's obligation to indemnify the shipowner if the shipowner was held liable to the longshoreman has been abolished. *Id.* This amendment of the statute, therefore, precluded Bilderbeck from suing the vessel on which he was laboring for breach of warranty of seaworthiness.

The *Scindia* Court examined in detail the duties of the vessel and the stevedore in regard to loading and unloading operations. The Court held that a shipowner has a duty to furnish a ship and its equipment in condition so that the stevedore may carry on its cargo operations with reasonable safety. If a shipowner fails to warn the stevedore of a hidden danger which was known to the shipowner, or should have been known in the exercise of reasonable care, the shipowner could be liable if that form of negligence causes injury to a longshoreman. There is no warranty, however, running to the workman, that the vessel is free from defect. Once the stevedore's cargo operations have begun, in the absence of contract provision, positive law, or custom to the contrary, the shipowner has no general duty to supervise or inspect to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. *Id.* at 166–72, 101 S.Ct. at 1621–25. *See also Wilhelm v. Assoc. Container Transportation (Australia), Ltd.,* 648 F.2d 1197 (9th Cir.1981) (longshoreman cannot maintain an action in strict products liability against a vessel owner, citing *Scindia* ).

The *Scindia* Court acknowledged that the more difficult issue was determining the shipowner's duties when he learns that an apparently dangerous condition exists or has developed in the cargo operation, which may cause injury to the longshoreman. *Id.* at 172–3, 101 S.Ct. at 1624–5. But we have not yet been confronted with a well pleaded allegation of negligence on the part of the shipowner causing injury to the longshoreman.

Bilderbeck asserts that he raised this issue in his second cause of action, which he claims was for "negligent" products liability, and that the district court erred in striking it. Bilderbeck's second cause of action reads in pertinent part:

10. On a date prior to June 22, 1982, defendants designed, manufactured, sold, serviced, tested, owned, controlled, constructed, maintained, distributed, assembled, altered, repaired and modified the vessel M/V STAR MAGNATE, and its gear, appliances and component parts. Said activities if defectively or negligently performed, would render such vessel, its gear, appliances and component parts dangerous to the lives and limbs of persons who must work aboard said vessel in the course and scope of their employment.

11. On or about June 22, 1982, as a direct and proximate result of a defective and negligent design, manufacture, service, assembly, ownership, testing, control, construction, maintenance, distribution, alteration, repair and modification of the vessel, its gear, appliances and component parts, there existed a hazard to persons, including plaintiff, whom defendants could reasonably have anticipated being aboard said vessel. As a direct and proximate result of said defect, and of said defendants' negligence and failure to warn of said defects, plaintiff was caused to suffer severe personal injuries, all to his damage in a sum in excess of $100,000.00

The district court treated Bilderbeck's claims that the ship and crane were negligently designed as just another way of alleging that the vessel was not seaworthy. Bilderbeck alleged that the safety cutoff switch on the crane was inadequate, the configuration of the crane made it impossible for the operator of the crane to see the area where the accident occurred, and that

the lack of space between the edge of the gantry crane and rail of the ship was unreasonably dangerous.

But Bilderbeck did not present a well pleaded allegation of the shipowners' negligence. He did not claim, for example, that safety stops, warning lights and bells, and the like had been negligently altered by the shipowners and charterers or improperly maintained, or that that the design and manufacture of the vessel and crane had been rendered unsafe through the negligence of the shipowners or charterers, or was rendered unsafe by their negligently drawn specifications.

The generalized conclusions in Bilderbeck's complaint did not constitute a well pleaded count of negligence. Bilderbeck had repeated opportunities to particularize his allegations, but he failed to do so. The generalized conclusions about causation appear to be just an alternative way of saying that the vessel was unseaworthy and that the unseaworthiness caused the injury. Neither quoted paragraph alleged that the shipowner or charterer knew of the alleged defects or in the exercise of reasonable care should have known of them.

In the absence of specific allegations of negligence, the trial court acted within its discretion in disregarding the generalizations as simply another attempt to get seaworthiness into the case in the face of clear Congressional intent to remove it. There was no reversible error.

We leave for later cases the question left open in *Scindia*, whether the functional equivalent of unseaworthiness can be brought back into these cases by pleading and proving that the vessel carried a negligently created defect that made the vessel hazardous to longshoremen and that the shipowner knew or reasonably should have known of the hazard, and nonetheless failed to warn the stevedore company so that it could take steps to protect its workmen. That was not this case.

Affirmed.