John ANASTASIOU, Plaintiff,

v.

M/T WORLD TRUST, World–Wide Shipping Agency, Garlan Co. S.A., and Moran Shipping Agencies Inc., Defendants.

No. 02 CV 1917(ILG).

United States District Court,
E.D. New York.

Oct. 1, 2004.

---

Stephen I. Weichert, Esq., Poles Tublin Stratakis Gonzalez & Weichert LLP, New York City, for Plaintiff.

Mary T. Reilly, Esq., Hill Betts & Nash LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

Plaintiff John Anastasiou ("Plaintiff" or "Anastasiou") brings this action against Defendants World–Wide Shipping Agency (Singapore) PTE Ltd. ("World–Wide"), Garlan Company S.A. ("Garlan"), Moran Shipping Agencies, Inc. ("Moran") and World Trust (the "Vessel") (collectively, "Defendants"). Plaintiff alleges claims under the general maritime law for breach of the warranty of seaworthiness of the Vessel (World–Trust) and negligence. Specifically, Plaintiff asserts that Defendants are liable to him for injuries he sustained while performing work on the Vessel on January 20, 2001. On that date, Anastasiou, who is the sole employee and owner of a company called Maritech Electronics Corporation ("Maritech"), slipped, fell and broke his left leg on a ramp shortly after boarding the Vessel, where he was supposed to conduct an annual radio safety survey.

Defendants now move for summary judgment on Plaintiff's claims, arguing that they did not owe Anastasiou a duty of seaworthiness because such claim is precluded by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA" or the "Act"), and there is no evidence in the record to support a finding that Defendants were negligent with respect to Plaintiff's injuries.

For the reasons that follow, Defendants' motion is granted.

### FACTUAL BACKGROUND

The following facts are undisputed.[1] Plaintiff, through his company, Maritech, services marine electronic equipment, including radios, and had more than sixteen years of experience in this field at the time of the events giving rise to this action. Anastasiou Dep. at 7–13 (attached as Exhibit D to the affidavit of Terence Gargan). Approximately seventy percent of the work that Plaintiff performs for Maritech involves servicing marine electronic equipment on board vessels. *Id.* at 14–15.

In January 2001, defendant Moran, an agent for the Vessel, engaged Plaintiff to perform an annual radio safety survey on the Vessel.[2] Anastasiou Dep. at 16–18. At that time, the Vessel was less than one year old and it and its machinery was built in accordance with the requirements set forth in the rules of the American Bureau of Shipping ("ABS"). Defs. Rule 56.1 Statement ¶¶ 9–10. ABS, as a member of the International Association of Classification Societies, adopts and applies the rules, among others, delineated in the International Convention for the Safety of Life at

---

1. Plaintiff admits that there are no genuine material issues of fact with respect to twenty-eight of the twenty-nine statements set forth in Defendants' Rule 56.1 Statement of Material Facts.

2. Defendant World–Wide was the manager and operator of the Vessel, and defendant Garlan was the registered owner of the Vessel. Defs. Rule 56.1 Statement ¶¶ 11–12.

Sea, 1974, 32 U.S.T. 47 ("SOLAS"). Georgas Aff. & Exp. Rept. ¶ 6.

On January 20, 2001, Plaintiff boarded the Vessel, which was anchored in the waters near the Verrazano Narrows Bridge in Brooklyn, to perform the survey. Anastasiou Dep. at 18–24. At about 1:00 pm, when Plaintiff embarked the Vessel, it was drizzling and the air temperature was close to freezing. *Id.* at 24–25. Plaintiff was wearing rubber–soled shoes and he testified that he did not have any difficulty walking on the deck of the Vessel after boarding. *Id.* at 23–24. He was carrying one bag with him which weighed approximately 25 pounds. *Id.* at 19–20.

The able bodied seaman on duty, Florante Baldonado ("Baldonado"), met Plaintiff when he boarded the Vessel to take him to the Captain's office. Anastasiou Tr. at 24–25. Anastasiou observed that the Vessel was new based on its condition, including glossy paint on the deck. *Id.* at 21–22. Plaintiff also recognized that in light of the precipitation, the deck was wet. *Id.* at 21–22. Shortly after arriving on board the Vessel, Baldonado and Plaintiff reached a ramp that was welded to the Vessel. *Id.* at 31–32. As with the rest of the ship, Plaintiff noticed that the ramp was wet from the drizzle, and testified that there were no other substances on the ramp. *Id.* at 31–32. The ramp was constructed of a solid diamond steel plate, and for traction, there were four horizontal bar cleats on each side of the ramp up and down which did not extend the entire width of the ramp. *Id.* at 27–29. The ramp did not have any hand or guard rails. *Id.* As Plaintiff started to walk down the ramp, he slipped suddenly, fell to the ground and ended up in a sitting position with his left leg under him. *Id.* at 29–30. Plaintiff was close to the end of the ramp after his fall. *Id.* at 30. Baldonado, who did not see Plaintiff's fall because he was walking ahead of him, turned back after hearing Plaintiff scream, and sought assistance for Plaintiff after he told him that his injury was serious—there was a noticeable bruise on Plaintiff's left leg. *Id.* at 30–31.

After his fall, the crew assisted Plaintiff to the Vessel's hospital room. Anastasiou Dep. at 37–40. Plaintiff waited in the hospital room for two hours because he initially hoped that after resting his left leg, he would be able to conduct the radio survey. *Id.* Plaintiff left the hospital room after it was determined that his injury would prevent him from conducting the radio survey. *Id.* at 37, 40. An independent launch took Plaintiff from the Vessel to the shore, and he drove his car home. *Id.* at 43–44. After eating a meal, Plaintiff drove himself to the hospital where he had surgery for his broken left leg. *Id.* The Plaintiff did not have any complaints about how the crew on board of the Vessel treated his leg injury. *Id.* at 42.

## DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue as to a material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will identify those facts which are material. *Id.* at 248, 106 S.Ct. 2505.

Therefore, the nonmoving party "may not rest upon the mere allegations or denials" of its pleadings; rather, its response must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"). However, in determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

## B. Warranty of Seaworthiness

■■■ Plaintiff asserts a claim for breach of the warranty of seaworthiness against Defendants. (Compl.¶¶ 20–22). The general maritime duty of seaworthiness obligates a vessel owner to furnish a vessel and appurtenances reasonably fit for their intended use. *GTS Indus. S.A. v. S/S "Havtjeld"*, 68 F.3d 1531, 1535 (2d Cir.1995). While not quite a standard of strict liability, the warranty of seaworthiness is completely divorced from negli-

gence principles. *See, e.g., Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

■■■ In this case, the critical aspect of the duty of unseaworthiness involves to whom that duty is owed. Defendants contend that, because Plaintiff is covered by the LHWCA, he is unable as a matter of law to assert a cause of action for unseaworthiness. 33 U.S.C. § 905(b); *see also Marroquin v. American Trading Transportation Co.*, 711 F.Supp. 1165, 1166 (E.D.N.Y.1988) ("If an employee is covered by the LHWCA, his exclusive legal remedy, other than workers' compensation benefits received from his employer, is an action in negligence against the owner of the ship on which he was injured"). Therefore, as a threshold issue, the Court must determine whether Plaintiff is covered by the LHWCA.[3] If he is covered by the LHWCA, then Plaintiff's claim for breach of the warranty of seaworthiness must be dismissed.

■■■ Plaintiff argues that he is not covered by the 1972 amendments to the LHWCA because his engagement as a marine radio technician did not involve the loading or unloading of cargo. Pl. Mem. at 8. Therefore, Plaintiff contends, he does not satisfy an occupational status test as has been applied to the 1972 amendments to the Act. *Id.* The Court finds, however, that Plaintiff satisfies the test for coverage under the LHWCA both prior and subsequent to the 1972 amendments to the Act.

---

**3.** The duty of seaworthiness unquestionably applies to anyone who can claim to be a "seaman" and thus gain the protection of the Jones Act, 33 U.S.C. § 901 *et seq.* However, Plaintiff does not fall within the class of persons who may claim the benefit of the Jones Act as he does not plead this statutory cause of action in the Complaint. In fact, Plaintiff does not satisfy at least one of the three elements necessary to be deemed a "seaman" under the Jones Act, namely that his connec-

tion to the Vessel is " 'substantial in both its duration and its nature.' " *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 63 (2d Cir.2002) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)). Here, Plaintiff's relationship to the Vessel was limited to his performance of the radio safety survey which was to be completed in one day, and therefore his relationship to the Vessel was not "substantial."

Thus, Plaintiff's cause of action for breach of the warranty of seaworthiness is barred by the LHWCA.[4]

Prior to 1972, when Congress amended the LHWCA, coverage existed under the Act only for injuries sustained upon the "navigable waters of the United States (including any ... dry dock ...)." 33 U.S.C. § 903 (1970 ed.); *see also Fleischmann v. Director, Office of Workers' Compensation Programs*, 137 F.3d 131, 135 (2d Cir.1998) ("Before 1972, the LHWCA covered only employees who were injured on actual navigable waters; the LHWCA did not cover employees injured on land, or on structures connected to land, no matter how close to the water the injury occurred") (citing *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 223–24, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969)). Therefore, before Congress amended the LHWCA in 1972, individuals gained coverage under the Act when they satisfied a "situs" requirement—namely, that they were injured on the navigable waters of the United States. In 1983, the Supreme Court held that in enacting the 1972 amendments, Congress did not intend to withdraw coverage from any employee who was actually injured upon navigable waters. *Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs.*, 459 U.S. 297, 325, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983) (hereinafter *"Perini"*); *see also Fleischmann*, 137 F.3d at 135 (an individual who satisfies coverage under the LHWCA as it existed prior to the 1972 amendments, does not need to satisfy the elements necessary for coverage that have been developed *since* 1972).

In *McCarthy v. The Bark Peking*, 716 F.2d 130, 132 (2d Cir.1983), *cert. denied*, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984), the Second Circuit, ruling after the Supreme Court's decision in *Perini*, 459 U.S. at 325, 103 S.Ct. 634, decided the question whether an individual who worked as a ship painter on navigable waters of the United States was covered by the LHWCA. The employee in *McCarthy* was injured "while painting the upper mainmast and spars" of a ship that was anchored at the South Street Seaport Museum in New York City. 716 F.2d at 132. The Second Circuit held that the employee was covered by the LHWCA because he was "injured on the actual navigable waters in the course of his employment on those waters ... Under th[e] latest Supreme Court decision, no more is required to qualify McCarthy as a statutory employee." *Id.* at 132–33 (citing *Perini*).

Similar to *McCarthy*, it is undisputed that Anastasiou was injured while attempting to perform work on the Vessel upon the navigable waters of the United States. (Anastasiou Dep. at 18, "The Vessel was anchored at the anchorage by the Verrazano–Narrows Bridge"). Therefore, following the Supreme Court's holding in *Perini* and the Second Circuit's holding in *McCarthy*, since Plaintiff was injured upon the navigable waters of the United States,

**4.** Although whether someone qualifies as an "employee" under the LHWCA is a mixed question of law and fact, this issue can be decided at the summary judgment stage because statutory terms are at issue and their interpretation is a question of law, and, as noted above, the relevant facts necessary to the Court's determination are undisputed. *See* fn. 1 (twenty-eight of twenty nine statements of material facts in Defendants' Rule 56.1 statement are undisputed); *cf. Chandris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) ("if reasonable persons, applying the proper legal standard could differ as to whether the employee was a member of a crew" as that phrase is defined by the Jones Act, it is a question for the jury) (internal quotation and citation omitted).

the Court finds that he was covered by the LHWCA.

■ Further, even if the Court did not hold that Plaintiff was covered by the pre–1972 amendments to the Act, it concludes that Plaintiff is covered under the LHWCA as it has been interpreted following passage of the 1972 amendments. As the Act stands now, it applies to a given injury or death upon the satisfaction of four requirements. *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 45, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989). The first requirement is that the injury occur in the course of the worker's employment. *Schwalb*, 493 U.S. at 45, 110 S.Ct. 381.[5] Second, the employer must qualify as a "maritime" employer. *Schwalb*, 493 U.S. at 45, 110 S.Ct. 381. A maritime employer is "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel)." 33 U.S.C. § 902(4) (1994). Third, the injury or death must occur at a maritime situs. *Schwalb*, 493 U.S. at 45, 110 S.Ct. 381. The situs test is passed if the injury occurs "upon the navigable waters of the United States" or other designated areas set forth in the statute. 33 U.S.C. § 903(a) (1994). Generally, the situs test geographically limits the application of the LHWCA by focusing on the spot of the injury. *Alford v. MP Indus.*, 16 Ben. Rev. Bd. Serv. (MB) 261 (1984) (holding auto accident injuring employee while on errand for employer fails situs test). Fourth, the injured employee must satisfy the employee status test. The status test is embedded in the LHWCA's definition of an employee which states, "[a]n 'employee' means any person engaged in *maritime employment,* including any longshoreman or other person engaged in longshoring operations, and any *harbor-worker* including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3) (1994) (emphasis added).

■ Here, there is no dispute that Plaintiff satisfies the first and third elements for coverage under the 1972 amendments to the LHWCA. As noted above, the record is clear that Plaintiff was injured during his employment with Maritech, and that the injury occurred in the navigable waters of the United States. Anastasiou Dep. at 7, 18 (Plaintiff is an employee of Maritech [6] and Plaintiff's injury occurred on board the Vessel which was anchored in the New York City harbor); *see generally Marinelli v. American Stevedoring, Ltd.*, 2000 WL 1133566, at *3

---

5. This element is embedded in the LHWCA's definition of an injury which states, "[t]he term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury cause by the willful act of a third person directed against an employee because of his employment." 33 U.S.C. § 902(2) (1994).

6. The fact that Plaintiff is self-employed and is the sole employee of his own company does not affect his coverage under the LHWCA.

*See* 33 U.S.C. § 902(4) ("employer means an employer *any* of whose employees are employed in maritime employment") (emphasis added). Therefore, the literal definition of "employer" in the LHWCA requires that an employer have only one employee. This reasoning has been applied by courts interpreting the LHWCA and I find it persuasive. *See, e.g., Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1059 (9th Cir.1997) (self-employed owner of business covered under LHWCA even though he did not have any employees working for him), *cert. denied*, 522 U.S. 1107, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998).

(BRB Aug. 1, 2000) (employer-employee relationship to be determined by test set forth in the Restatement (Second) of Agency, including the right to control details of the work and the relative nature of the work), *aff'd,* 248 F.3d 54 (2d Cir.2001). The parties disagree whether Plaintiff satisfied the status test, and specifically, whether he was engaged in "maritime employment" or held another occupation entitling him to coverage under the LHWCA when he sought to conduct the radio survey on the Vessel. In particular, Plaintiff argues that he does not fall under the protections of the LHWCA because his work in conducting the radio survey was not an "integral or essential part of loading or unloading a vessel." However, Plaintiff misreads the cases which discuss the principle he advances.

A series of Supreme Court decisions addressing this issue has left it "clearly decided that, aside from the specified occupations, *land-based activity* occurring within the § 903 situs will be deemed maritime only if it is an integral or essential part of loading or unloading a vessel." *Schwalb,* 493 U.S. 40, 45, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989) (emphasis added); *see also Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 423–24, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985) (maritime employment requirement as applied to land-based work other than longshoring and the other occupations named in § 902(3) is an occupational test focusing on loading and unloading); *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 267, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977) (same). In fact, the status test was added through the 1972 amendments to the Act, the purpose of which was to extend coverage to those injured in maritime employment on certain areas adjoining previously-covered sites but not actually on navigable waters. It thus "became necessary to describe affir-matively the class of workers Congress desired to compensate," *Caputo,* 432 U.S. at 264, 97 S.Ct. 2348, and thus the status requirement was created. However, because Congress presumed that an employee injured upon navigable waters in the course of his employment had always been covered, and would remain covered, the Supreme Court has held that the added status requirement defines only the scope of the landward coverage extended by the 1972 amendments. *See Perini,* 459 U.S. at 317–19, 103 S.Ct. 634. Therefore, the cases upon which Plaintiff relies, including *Caputo* and *Schwalb,* discussing the loading and unloading criteria necessary for coverage under the LHWCA, do not apply to Plaintiff because his injury did not occur on land, but rather, as discussed above, on the navigable waters of the United States.

The pertinent inquiry to determine whether Plaintiff is covered under the 1972 amendments to the LHWCA, therefore, is not whether Plaintiff was involved in the loading or unloading of cargo, but rather whether he was engaged in "maritime employment" at the time of his injury or otherwise satisfied one of the enumerated occupational tests set forth in § 902(3). Although the term "maritime employment" is neither defined in the LHWCA nor in its legislative history, 33 U.S.C. § 902(3), the Second Circuit has held that an individual satisfies the status test where he or she has "a significant relationship to *navigation* or to commerce on navigable waters." *Triguero v. Consolidated Rail Corp.,* 932 F.2d 95, 100 (2d Cir.1991) (security guards held to be covered under LHWCA because their function is "essential to the longshoring operation") (emphasis added). In this case, Plaintiff's engagement to ensure the proper functioning of the Vessel's radio through performance of the annual survey is unquestionably related to "navigation"

as Plaintiff's counsel himself recognizes.[7] *See* Pl. Mem. at 8 ("The radio survey is conducted to further the vessel's ability to communicate with the shore and to *aid in the vessel's navigation*") (emphasis added); *see also* 17 Am.Jur. Proof of Facts (Marine Radar Accidents) 283 § 65 (2004) (radio communication equipment on board a vessel "serves primarily for exchanging messages with shore stations and other ships, but is also used extensively for weather reports, notices to mariners, and time signals"); *cf. Clark v. Solomon Navigation, Ltd.*, 631 F.Supp. 1275, 1280–81 (S.D.N.Y.1986) (river pilot not covered by LHWCA because statute specifically excludes any individual who is a "master or member of a crew"). Therefore, the Court holds that Plaintiff was engaged in "maritime employment" when he injured himself on the Vessel, and thus he is covered by the LHWCA.

 Not only was Plaintiff's engagement to conduct the annual radio safety survey characteristic of "maritime employment," the Court finds that Plaintiff

also qualifies as a statutory "employee" under the LHWCA because he is properly characterized as a "harbor worker." The Second Circuit has found that a "harbor worker" under § 902(3) of the LHWCA "requires some connection to ships." *Fleischmann*, 137 F.3d at 137 (citing *Fusco v. Perini N. River Assocs.*, 622 F.2d 1111, 1113 (2d Cir.1980) ("To come within § 2(3) a harborworker's activity must relate to ships....")). Here, to the extent that Plaintiff is considered to be a land-based worker, he qualifies as a "harbor worker" under the Second Circuit test because his principal employment activity involves servicing marine radios (on board vessels) that are, as noted above, instrumental to the navigation of ships. *See generally Triguero*, 932 F.2d at 99 ("the statutory language of the Act, as amended in 1972, is broad and suggests that we should take an expansive view of the extended coverage") (citing and quoting *Caputo*, 432 U.S. at 268, 97 S.Ct. 2348). Thus, Plaintiff is also covered under the LHWCA as a "harbor worker." [8]

---

7. In interpreting the term "maritime employment," the Court gives it its plain meaning. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 342, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in interpreting a statute, a court must determine whether the language at issue is plain and unambiguous with regard to the particular dispute in the case, which is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as well). Here, there is nothing that would suggest that "maritime employment" should be interpreted to exclude an individual like Plaintiff, who testified that he is in the field of marine electronics repair. Anastasiou Dep. at 13–18; *see also* American Heritage Dictionary of the English Language (2d ed.) at 766 (maritime is "[o]f or concerned with shipping or *navigation*") (emphasis added).

8. In opposition to Defendants' motion, Plaintiff argues that he is owed a duty of seawor-

thiness based on the Supreme Court's decision in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), *rehearing denied*, 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946). While that decision greatly expanded the scope of the class of individuals to whom the duty of seaworthiness is owed, the LHWCA clearly divides maritime workers into two mutually exclusive categories: seamen, on the one hand, and longshoremen, harbor workers and all other employees entitled to protection under the Act, on the other hand. *Cf. Aparicio v. Swan Lake*, 643 F.2d 1109, 1115 (5th Cir.1981) (longshoremen and harbor workers not covered by the LHWCA may avail themselves of the duty of seaworthiness). Courts in the Second Circuit holding that individuals qualify as "Sieracki seamen" and are therefore entitled to the duty of seaworthiness, have also found that these individuals are not subject to the LHWCA. *See Clark*, 631 F.Supp. at 1280–81 (river pilot cannot gain coverage under the Act based on specific exclusion for

For the foregoing reasons, the Court holds that Plaintiff is covered under the LHWCA, and thus his claim for breach of the warranty of seaworthiness should be dismissed.

## C. Negligence

■ Because, as discussed above, Plaintiff is covered by the LHWCA, he cannot make out a claim for unseaworthiness but only for negligence under 33 U.S.C. § 905(b).[9] Plaintiff, with the affidavit testimony of a naval architect and marine engineer, asserts a claim for negligence against the Defendants based largely on the design defects of the ramp on which he suffered his injury as follows: (1) the ramp had no handrails or guardrails; (2) the "diamond plate surface of the ramp contained no drain holes for water or snow to drain away to prevent slipping"; (3) the "ramp became slippery when wet"; (4) "the ramp contained no non-skid or non-slip surface on top of the diamond plate to ward against the slipperiness of the ramp surface when it became wet;" (5) the ramp angle of about 13 degrees was too steep; and (6) the foot grip strips on the ramp did not cover the entire width of the ramp. Georgas Aff. ¶ 4; Report; Anastasiou Dep. at 31–37. Because the expert report which Plaintiff submits states that the ramp was designed defectively, and therefore is directed toward Plaintiff's unseaworthiness claim, and not to whether Defendants engaged in any negligent conduct, I find that the report does not raise a genuine issue of material fact.

A claim for negligent design is merely another way of alleging that the Vessel was unseaworthy, a cause of action that Plaintiff cannot assert because, as discussed above, he is covered by the LHWCA. Therefore, to the extent that Plaintiff is predicating his negligence action on design defects of the ramp, his claim is flawed. For example, in *Bilderbeck v. World Wide Shipping Agency*, 776 F.2d 817, 819 (9th Cir.1985), the court held that in order to defend against a summary judgment motion, an injured contractor must specifically identify negligent conduct; otherwise it is "simply another attempt to get seaworthiness into the case in the face of a clear Congressional intent to remove it." Thus, courts have granted judgment as a matter of law where, for example, a party alleges that the ramps on a vessel were not designed properly. *See, e.g., Matthews v. Lykes Bros. S.S. Co., Inc.*, 1987 WL 16506, at * 17 (C.D.Cal. Feb. 26, 1987) ("absent evidence" that the vessel owner "negligently created or modified the ramps, it has no liability therefor"), *aff'd*, 854 F.2d 1166 (9th Cir.1988); *see also Salvato v. Hakko Maritime Corp.*, 718 F.Supp. 1443, 1445–46 (N.D.Cal.1989) (allegations that defendant negligently placed lashing padeyes on car carrier amounted to a design defect not recognized by the LHWCA); *McSwiggan v. Oulu Shipping Ltd.*, 1992 WL 70416, at * 3 (E.D.Pa. Mar. 31, 1992) (plaintiff's claim that existence of a recessed ladder is a

---

"member[s] of a crew"); *Marroquin*, 711 F.Supp. at 1167 (member of ship's "riding crew" not covered by LHWCA where he was injured on the high seas and not on the navigable waters of the United States). As discussed above, Plaintiff is covered by the LHWCA and thus he is not entitled to the protections offered by the Supreme Court in *Sieracki*.

**9.** Although Plaintiff does not plead a negligence cause of action under the LHWCA in his complaint, the Court treats his general maritime negligence claim as one brought under the Act.

design defect rendering the ship unseaworthy is not available under the LHWCA), *aff'd*, 980 F.2d 723 (3d Cir. 1992).

▮▮▮ Plaintiff does not contend that Defendants were negligent in designing the ramp. To the contrary, in his response to Defendants' Rule 56.1 Statement, Plaintiff does not dispute that the Vessel "and its machinery have been built to the satisfaction of the Surveyors of the American Bureau of Shipping ("ABS") to the full requirements contained in the ABS Rules." Def. Rule 56.1 Statement ¶ 10. The Plaintiff's failure to contest this fact constitutes an admission, and the Court is bound to accept it as undisputed notwithstanding anything to the contrary set forth in Plaintiff's expert report. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998). The ABS, a classification society based in New York, provides surveyors on site during construction of a vessel to verify that approved plans are followed, approved material and components are properly installed, good workmanship practices are followed and "to verify compliance with the relevant international safety conventions," including SOLAS, "and applicable rules of the classification society." *Sundance Cruises Corp., SCI v. American Bureau of Shipping*, 7 F.3d 1077, 1078 (2d Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994). While the Second Circuit has held that a shipowner's "compliance with SOLAS" and the rules of the classification society do "not establish the vessel's seaworthiness," *see Asbestos Corp. Ltd. v. Compagnie De Navigation Fraissinet Et Cyprien Fabre*, 480 F.2d 669, 671 (2d Cir. 1973), the Court finds that because the parties do not dispute that the Vessel was built in accordance with the requisite specifications and rules of ABS, Defendants cannot be found to have had actual or constructive notice that the ramp was dangerous unless they learned of a dangerous condition independent of the ramp's design and construction. *Cf. Cerro Sales Corp. v. Atlantic Marine Enterprises*, 403 F.Supp. 562, 567–68 (S.D.N.Y.1975) (holding that a ship was not unseaworthy where the alleged unsafe instrument complied with the regulations of SOLAS).

Here, Plaintiff has not come forward with any evidence that Defendants had actual or constructive notice from any third party of the dangerous condition of the ramp. Specifically, Plaintiff has failed to proffer any evidence which would indicate that Defendants were aware that the ramp was unsafe to walk on when it was wet, or evidence of other accidents or problems because of the ramp's condition, or that Defendants should have known that the ramp might cause injury. Plaintiff's failure in that regard therefore requires the Court to dismiss Plaintiff's negligence claim. *See, e.g., Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168–69 (2d Cir.1980) (in the context of negligence claims under LHWCA, plaintiff must show that defendant "had notice of the dangerous condition (and should have reasonably anticipated that plaintiff might be injured by it)").

▮▮▮ Even assuming that Plaintiff's negligence claim is not precluded because he seeks a remedy for the alleged design defects of the ramp, and because Defendants did not have prior notice of the dangerous condition of the ramp, the Court finds that his allegations regarding Defendants' negligence do not create a genuine issue of material fact. Under the interpretation of the LHWCA set forth in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 172–73, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) and *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 96, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994), a ship-

owner has a duty of care to an individual like Plaintiff who is invited on a ship to perform navigation related work in three narrow situations, only one of which is relevant in this case—referred to as the turnover duty.[10]

■ The turnover duty obligates a vessel owner to maintain a ship and its equipment so that a reasonable and experienced contractor can pursue his assignment with "reasonable safety," and to warn the contractor of hidden defects which could not have been detected by a reasonable inspection by the contractor. *Scindia,* 451 U.S. at 167, 101 S.Ct. 1614; *Gravatt v. City of New York,* 226 F.3d 108, 120–21 (2d Cir. 2000) (same), *cert. denied,* 532 U.S. 957, 121 S.Ct. 1485, 149 L.Ed.2d 373 (2001). However, "[t]here is no duty to turn over an absolutely safe vessel." *See, e.g., Sinagra v. Atlantic Ocean Shipping,* 182 F.Supp.2d 294, 300 (E.D.N.Y.2001).

■ Mindful of the need to draw all reasonable inferences in favor of Plaintiff, the Court nonetheless concludes that Defendants are entitled to judgment as a matter of law because on the basis of the present record no rational jury could conclude that Defendants were negligent with respect to the condition of the ramp on the day of Plaintiff's injury. First, with respect to Plaintiff's claim that Defendants were negligent because the ramp was slippery, it is undisputed that the ramp's condition was not hidden and was known to Plaintiff because he testified that when he boarded the Vessel, he observed that both the deck and the ramp were wet. Anastasiou Dep. at 21, 31–32. Thus, according to the Supreme Court's holding in *Scindia,* Plaintiff was required to walk on the deck and ramp using reasonable care in light of the wet conditions that were apparent to him, particularly given Plaintiff's experience as a maritime worker for more than sixteen years.[11]

■ Courts have consistently held, however, that "a slippery deck condition caused by rain ... cannot form the basis for a finding of negligence, since in law it does not constitute an unreasonably dangerous working condition." *Zielinski v. Companhia De Navegacao Maritima Ne-*

10. The two other duties are referred to as "active control duty" and the "duty to intervene." Under the active control duty, once a contractor begins his operations, the vessel will be liable "if it actively involves itself in the ... operations and negligently injures" the contractor. *Scindia,* 451 U.S. at 167, 101 S.Ct. 1614. Here, the undisputed facts reveal that Plaintiff never began his radio survey because he was injured prior to doing so, and thus the active control duty is inapplicable. Under the duty to intervene, where the vessel owner is aware of a dangerous condition and the contractor is not exercising reasonable care to protect himself or his employees, the owner has a duty to intervene despite the general rule that a vessel owner has no duty to warn the contractor of obvious defects and may rely on the contractor's expertise in the performance of his duties. *Scindia,* 451 U.S. at 175–76, 101 S.Ct. 1614. Here, Plaintiff does not argue, and the undisputed facts reveal, that none of the Defendants were aware that Anastasiou was not exercising reasonable care when boarding the Vessel and walking on the ramp.

11. Although Plaintiff disputes Defendants' statement that "[o]ther than the ramp being somewhat wet from the drizzle, there was no oil or other substance on the ramp or in the area of the ramp when Plaintiff fell," *see* Pl. Rule 56.1 Response ¶ 21, he does not offer any record citation to support this "dispute." Rather, at his deposition, Plaintiff testified that he did not observe any substances on the ramp other than water on the day of his injury. Anastasiou Dep. at 32. Therefore, for purposes of Defendants' summary judgment motion, the Court must credit Plaintiff's testimony and accept the fact that the only substance on the ramp on the day of Plaintiff's injury was water. This condition, however, as discussed below, does not support a negligence claim.

*tumar,* 460 F.Supp. 1179, 1182 (E.D.N.Y. 1978) (citing *Denaro v. United States,* 337 F.2d 275, 276 (2d Cir.1964)). Indeed, Plaintiff has not made any claim that would suggest that as an experienced maritime worker, he needed to be warned that it might be slippery on the ramp due to the wet surface, particularly since he was aware of the weather when he boarded the Vessel. Therefore, the Court finds that Defendants cannot be held negligent because the ramp was wet on the day of Plaintiff's injury.

■ Plaintiff also argues that Defendants were negligent because the Vessel failed to have non-slip or non-stick paint on the ramp. However, courts have consistently held that "[t]he lack of a non-skid surface [i]s not a hidden condition which would give rise to the vessel owner's duty to warn." *See, e.g., Davis v. Pan Ocean Shipping Co., Ltd.,* 1999 WL 144095, at *5 (E.D.Pa. Mar. 15, 1999) (citing *Thompson v. Cargill, Inc.,* 585 F.Supp. 1332, 1335 (E.D.La.1984)); *Verret v. Dean Boats, Inc.,* 1989 WL 81274, at *9 (E.D.La. July 20, 1989) (same). These courts have also found, and taken judicial notice of the fact that, expert contractors "frequently perform their work on the decks of vessels which may be devoid of nonskid surfaces. To allow [contractors] to bring a negligence action against a vessel without nonskid surfaces would be paramount to allowing them to proceed on a theory of unseaworthiness, a right which was abrogated by the 1972 amendments to the LHWCA." *Verret,* 1989 WL 81274, at *9 (citing *Thompson,* 585 F.Supp. at 1334 n. 1). Like in the cited cases, the Court finds that the non-skid surface was not a latent condition that Defendants had a duty to

warn Plaintiff about. Moreover, given Plaintiff's extensive experience working on vessels, his testimony that prior to the injury he recognized that the paint on the ramp would not prevent skids, *see* Anastasiou Dep. at 36, that he did not offer any evidence of other accidents or problems because of the construction of the ramp, or that Defendants should have known about the danger of the ramp, the Court finds that Plaintiff has not raised a triable issue for a jury whether Defendants were negligent because the ramp had a non-slip or non-skid surface.[12]

■ Further, with respect to the absence of hand or guard rails on the ramp, the Court notes that this condition was not hidden and was obvious to Plaintiff. Moreover, Plaintiff's argument that his injury was caused by the ramp's failure to have handrails or guardrails is based entirely on conjecture. As the court in *Zielinski,* 460 F.Supp. at 1183 n. 8, found, "[o]n this factual record, it would be sheer speculation to conjure up a theory of negligence based on a failure to provide railings or other handholds on the slippery deck of the" vessel." Similarly, Plaintiff has offered no proof that he would not have fallen on the wet ramp if it had a guard or handrail. Therefore, the Court finds that Plaintiff has not come forward with any evidence to show that the lack of handrails were a proximate cause of his injury. *Cf. Laakso v. Mitsui & Co. USA, Inc.,* 1989 WL 149186, at *10 (E.D.La. Dec. 6, 1989) (court holds that unsafe ramp design breached duty of seaworthiness).

■ Finally, in his Complaint, Plaintiff alleges that Defendants were negligent in treating him for his broken leg.

---

12. Plaintiff's argument that Defendants were negligent because they allowed him to walk on board the vessel with rubber-soled shoes finds no support in the law. As an experienced maritime employee, Defendants were entitled to rely on Plaintiff to wear appropriate clothes and shoes.

(Compl. ¶ 21). However, other than setting forth conclusory allegations in the Complaint to that effect, Plaintiff has not supported this claim with any admissible evidence to create a genuine issue of material fact, a point which his counsel conceded at oral argument. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. As such, Plaintiff's negligence claim based on Defendants' failure to provide him with prompt medical care is deficient.

### CONCLUSION

Because Plaintiff's claim for breach of the duty of seaworthiness is precluded by the Longshore and Harbor Workers' Compensation Act, and he fails to create a genuine issue of material fact on his negligence claim, Defendants' motion for summary judgment dismissing the Complaint with prejudice is granted.

SO ORDERED.